# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

AMY LAMPMAN, AMY LUTGEN, JACKIE THOMPSON SCHAFFNER, JESSICA SAVITS, KIMBERLY KURTH, JODI VANDERHEIDEN, and SUSAN HANAN,

        Plaintiffs,

vs.

MARSHA K. TERNUS, DAVID K. BOYD, LINDA A. NILGES, SCOTT S. HAND, LEESA A. MCNEIL, KENT V. WIRTH, ELIZABETH J. BALDWIN, CARROLL EDMONDSON, HOWARD THOMAS, and DEBORAH M. DICE, all in their individual and official capacities,

        Defendants.

No. C10-3025-MWB

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

*I.* *INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B.* *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *A.* *Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *B.* *Due Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        *1.* *Property interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**2.**   *Reorganization exception* . . . . . . . . . . . . . . . . . . . . . . . 19

**III.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

> Many euphemisms have been coined for "(permanent) layoff",
> including "downsizing", "excess reduction", "rightsizing",
> "delayering", "smartsizing", "redeployment", "workforce
> reduction", "workforce optimization", "simplification", "force
> shaping", "recussion", and "reduction in force" (also called
> "RIF", especially in the government employment sector).[1]

The business of state government is an increasingly difficult one in these times of economic hardships.  This litigation requires me to determine whether plaintiff court reporters have a federally protected constitutional "due process" property interest in continued employment with the state?  If so, were they laid off or their hours permanently reduced as part of a legitimate governmental reorganization?   If these layoffs were legitimate does the judicially created doctrine "reorganization exception" strip the plaintiffs of their federally protected constitutional entitlement to pre termination notice and hearing?

---

[1] Wikipedia, *Layoff, available at* http:// en. wikipedia. org/ wiki/ Layoff (last visited February 6, 2011).

2

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On December 7, 2010, plaintiffs, court reporters who are or were employed by the State of Iowa, filed an Amended Complaint under 42 U.S.C. § 1983, claiming that they were terminated or had their hours reduced in violation of the Due Process Clause of the Fourteenth Amendment. On December 21, 2010, defendants, the former Chief Justice of the Iowa Supreme Court, the Iowa State Court Administrator, and the Court Administrators for each of the eight Iowa judicial districts, filed their Answer to the Amended Complaint. Defendants filed an Amended Answer on June 28, 2011.

On December 16, 2011, defendants filed a Motion for Summary Judgment (docket no. 42). Defendants make three arguments in their motion. First, defendants contend that plaintiffs have failed to make out a due process claim because the relevant Iowa statutes do not create a legitimate claim of entitlement to continued employment. Second, defendants alternatively argue that, assuming arguendo that Iowa law creates a property interest in plaintiffs' employment, plaintiffs were not entitled to pre-termination notice and an opportunity to be heard under the "reorganization exception" to the general rule that requires due process prior to a public employee's termination. Third, defendants alternatively argue they are entitled to qualified immunity from liability for damages on plaintiffs' due process claims.

On December 30, 2011, plaintiffs also filed a Motion for Summary Judgment. Plaintiffs filed an Amended Motion for Summary Judgment on January 3, 2012 (Docket no. 51). In contrast to defendants' motion, plaintiffs contend that summary judgment should be granted in their favor. They argue that they were entitled to due process, including notice and an opportunity to be heard, prior to employment termination or

reduction in hours.  Plaintiffs further argue that defendants failed to provide them with such notice and opportunity to be heard prior to terminating their employment or reducing their employment hours, violating their right to due process under the Fourteenth Amendment.

On January 9, 2012, plaintiffs filed their resistance to defendants' Motion for Summary Judgment.  In their resistance, plaintiffs argue the relevant Iowa statutes create a legitimate claim of entitlement to continued employment entitling them to due process. Plaintiffs also contend that the "reorganization exception" is inapplicable here because the only the Iowa legislature had the authority to extinguish their property interest in their jobs.  Finally, plaintiffs argue defendants are not entitled to qualified immunity from liability for damages on plaintiffs' Due Process claims because it was clear that the relevant Iowa statutes gave plaintiffs a property interest in their jobs.  In addition, plaintiffs argue that, even if qualified immunity did apply, qualified immunity would only protect the defendants in their individual liability and would not bar plaintiffs' claim for reinstatement.  On January 17, 2012, defendants filed their reply brief in support of their Motion for Summary Judgment.  Plaintiffs filed their reply brief in support of their Motion for Summary Judgment on February 3, 2012.

### B.  Factual Background

I set forth those facts, both undisputed and disputed, sufficient to put in context the parties' arguments concerning the cross-motions for summary judgment.  Unless otherwise indicated, the facts recited here are undisputed, at least for purposes of summary judgment. Additional factual allegations and the extent to which they are or are not disputed or material will be discussed, if necessary, in my legal analysis.

4

Plaintiffs Amy Lampman, Amy Lutgen, Jackie Thompson Schaffner, Jessica Savits, Kimberly Kurth, Jodi Vanderheiden, and Susan Hanan  were all appointed by a district associate judge with the approval of a chief judge and a state court administrator and prior authorization by the Iowa Supreme Court in accordance with Iowa Code §§ 602.602.1402, and 602.6603(2).   There are no jobs for the State of Iowa entitled "District Associate Court Reporter" or "District Court Reporter."  The pay scale for court reporters is the same whether they work for a district judge, a district associate judge, or a juvenile judge.  The qualifications for all court reporters is the same.

On April 23, 1990, District Associate Judge John R. Sladek appointed Kurth to work as a court reporter in Iowa's Sixth Judicial District.   Kurth's personnel file was destroyed by a flood in 2008.  Following Judge Sladek's retirement in 1995, his successor, District Associate Judge Stephen C. Gerrard II, appointed Kurth to continue work as a court reporter in Iowa's Sixth Judicial District.   In December 2004, District Associate Judge Sylvia A. Lewis appointed Kurth to continue her work as a court reporter.   Kurth worked full time as a court reporter for the State of Iowa from April 1990 until December 11, 2009.

On September 15, 1992, District Judge Harlan Bainter appointed Hanan to work as a court reporter in Iowa's Eighth Judicial District.  In 1993, District Associate Judge Gary R. Noneman appointed Hanan to work as a court reporter in the Eighth Judicial District.

On September 22, 1995, Vanderheiden was hired by the State of Iowa to work as a roving court reporter in Iowa's Second Judicial District.   On June 13, 1997, District Associate Judge Frederick Breen appointed Vanderheiden as his court reporter in the Second Judicial District.   On June 13, 2006, Vanderheiden's appointment was rescinded by operation of law due to Judge Breen's retirement.   On October 1, 2007, District

Associate Judge Susan Larsen Christensen appointed Vanderheiden to work as a court reporter in Iowa's Fourth Judicial District. Vanderheiden worked full time as a court reporter for Judge Christensen.

In September 1997, Associate Juvenile Judge Alan D. Allbee appointed Lutgen to work as a court reporter in Iowa's First Judicial District. In September 1999, Associate Juvenile Judge James McGlynn appointed Lutgen to work as a court reporter in Iowa's Second Judicial District.

On September 4, 1998, District Judge Gerald W. Magee appointed Lampman to work as a court reporter in Iowa's Second Judicial District. Judge Magee viewed Lampman as a hard worker and a dedicated state employee. On October 1, 2008, District Associate Judge Gregg Rosenbladt appointed Lampman to work as a court reporter in Iowa's Second Judicial District. Judge Rosenbladt's order states in pertinent part: "This Order is effective immediately and is to continue until terminated by subsequent order or by operation of law, and the compensation shall be at the rate as provided by law." Order and Oath at 1, Plaintiffs' Am. App. at 107. On October 29, 1999, District Associate Judge Kim M. Riley appointed Lampamn to work as a court reporter in Iowa's Second Judicial District.

On July 14, 2006, District Associate Judge Kurt J. Stoebe appointed Schaffner to work as a court reporter for Iowa's Second Judicial District. Judge Stoebe's order states in pertinent part: "This order is effective immediately and is to continue until terminated by subsequent order or by operation of law, and the compensation shall be at the rate as provided by law." Order and Oath at 1, Plaintiffs' Am. App. at 106.

Defendant Marsha Ternus was, at all times relevant, the Chief Justice of the Iowa Supreme Court. Defendant David K. Boyd is the Iowa State Court Administrator.

6

Defendant Scott S. Hand is the District Court Administrator for the Second Judicial District and defendant Kent V. Wirth occupies the same position with the Fourth Judicial District. Defendant Carroll Edmondson is the District Court Administrator for the Sixth Judicial District while defendant Deborah M. Dice is the Eighth Judicial District's Court Administrator. Hand, Wirth, Edmondson, and Dice were all appointed in accordance with Iowa Code § 602.1214.

In 2009, Iowa's judicial branch faced a significant budget deficit going into fiscal year 2010, which began on July 1, 2009. During the spring of 2009, the Judicial Council began to discuss the possibility of laying off court reporters to help reduce the budget deficit. The possibility of laying off justices of the Iowa Supreme Court, judges on the Iowa Court of Appeals, and Iowa district court judges was "not on the table," because such layoffs would have required statutory amendments. No one asked the Iowa Attorney General's Office for a legal opinion about whether the judicial branch had the authority to terminate or permanently reduce the hours of court reporters.

Boyd prepared a layoff plan, with input and advice from the Iowa Judicial Council, to eliminate positions as part of the judicial branch's effort to reduce its budget. The Judicial Council recommended that the Iowa Supreme Court adopt Boyd's plan. In June 2009, the Iowa Supreme Court adopted and approved Boyd's layoff plan. Boyd's plan eliminated positions across the judicial branch, including law clerks, court reporters assigned to district associate judges, juvenile technicians, judicial clerks, and other administrative staff. Under the plan, each judicial district was required to eliminate a designated number of court reporters. No one ever discussed or suggested that court reporters affected by the layoffs or permanent reduction in hours might be entitled to some kind of hearing or due process. It was recommended that the judicial branch cut the full

time equivalencies ("FTEs") of 15.9 court reporters.  Court reporters who reported to Iowa District Court judges were not subject to layoffs.  Only court reporters who worked for Iowa District Associate Court judges were terminated or had their hours permanently reduced.  Boyd offered the following explanation for why court reporters who worked for Iowa District Associate Court judges were targeted for layoffs:

> I would just--I would just simply say that, to avoid—to avoid as much grief as possible from their district court brethren as a group, I think the chief judges were leaning towards district associate positions, even though they knew that then they were going to have to reassign to get the work done, court reporters who work for district judges to district associate court, but they would—they would take less grief if they could zero in on the district associate judge court reporters because those are positions that, you know, the statutory language is a little different on, and they had to approve even providing a court reporter to a DAJ in the first place, so.

Boyd Dep. at 57-58, Plaintiffs' Amend. App. at 8.  The Judicial Council instructed the district court administrators that they were "not to inform the judges who will lose a court reporter until immediately before the layoff process begins."  Judicial Council Minutes, June 19, 2009, at 3; Plaintiffs' App. at 111.  Chief Justice Ternus does not recall being "concerned about the process used for laying off the court reporters."  Ternus Dep. at 25-26; Plaintiffs' App. at 72.  Boyd, the district court administrators and the chief judges of each Iowa judicial district implemented the Iowa Supreme Court's layoff plan.  Court reporters who had their hours permanently reduced were prohibited from doing any work as free lance court reporters in the State of Iowa.

On June 25, 2009, Scott Hand notified Amy Lampman that she was being laid off effective July 23, 2009.  Hand was acting on the orders of the Iowa Supreme Court, Chief Justice Ternus, and Boyd when he laid off Lampman.  At the time she was terminated,

Lampman still worked for Judge Rosenbladt.  Judge Rosenbladt viewed Lampman to be a good court reporter who had never been disciplined or counseled during her employment.  Lampman did not receive a pre-termination notice or hearing.  Lampman and Judge Rosenbladt first found out that Lampman was to be terminated on June 25, 2009.  As of that date, Lampman was no longer assigned any duties.  It was not Judge Rosenbladt's decision to terminate Lampman.  He was not allowed any input on whether Lampman should be terminated.  Upon her termination, Lampman had served as a court reporter with the State of Iowa for approximately 12 years and 6 months.

On June 25, 2009, Kent Wirth notified Jodi Vanderheiden that her hours were being reduced, from 40 hours per week to 32 hours per week, effective July 10, 2009.  On November 12, 2009, Wirth notified Vanderheiden that her hours were being further reduced from 32 hours per week to 20 hours per week, effective December 11, 2009. Wirth was acting on the orders of the Iowa Supreme Court, Chief Justice Ternus, and Boyd when he reduced Vanderheiden's hours.  Vanderheiden was considered a good reporter.   Judge Christensen had no say in the decision to permanently reduce Vanderheiden's hours.  Judge Christensen learned of Vanderheiden's reduction in hours at the same time as Vanderheiden.   At no time prior to her permanent reduction in hours was Vanderheiden given a hearing.  There were court reporters in the Fourth Judicial District who had less seniority than Vanderheiden who were neither laid off nor had their work hours cut.  Vanderheiden's years of service in Iowa's Second Judicial District were not considered in calculating her seniority.  Vanderheiden had worked in the Second Judicial District for 11 years before beginning to work in the Fourth Judicial District. Other judicial districts calculated seniority by total years of service even when the employee had a break in service.  No one  in the State Court Administrator's office

9

provided judicial districts with any guidance about whether seniority should be calculated by including or not including a court reporter's breaks in service.   On January 3, 2011, Vanderheiden's hours were increased to 30 hours per week.   She has served as a court reporter with the State of Iowa for approximately 15 years and 2 months.

Also on June 25, 2009, Deb Dice informed Susan Hanan that she was being laid off effective July 23, 2009.   At the time her employment was terminated, Hanan still worked for Judge Noneman.   Dice was acting on the orders of the Iowa Supreme Court, Chief Justice Ternus, and Boyd when she laid off Hanan.   Judge Noneman considered Hanan to be an excellent court reporter who was a model employee and team player.   Judge Noneman believes Iowa's Eighth Judicial District could have used a dozen employees just like her.   Judge Noneman was given no say in the decision to terminate Hanan.   He did not find out about Hanan's termination until June 25, 2009.   Hanan did not receive a pre-termination notice or hearing.   Hanan served as a court reporter with the State of Iowa for approximately 16 years and 10 months.   Hanan filed a grievance regarding her termination, first to Chief Judge James Blomgran and then to State Court Administrator David Boyd, raising the lack of due process in her termination, among other issues. Hanan's grievance was denied, first by Dice and then by Betty Buitenwerf, legal counsel to the Iowa State Court Administrator.

Over the summer and fall of 2009, the State of Iowa's budgetary conditions worsened.  This meant the judicial branch had to reduce its fiscal year 2010 budget again by 7.1 percent, which required another round of layoffs and budget reductions.  As a result, Boyd prepared a layoff plan, with input and advice from the Iowa Judicial Council, to eliminate positions, or permanently reduce hours in other positions, as part of the judicial branch's effort to further reduce its budget.  On October 19, 2009, Judge James

McGlynn sent an email to Second Judicial District Court Administrator, Scott Hand, in which he questioned whether court reporters could be summarily discharged under Iowa law. On October 22, 2009, Judge Timothy Finn sent an email to Hand in which he stated that Judge McGlynn's email "raises an important issue which should be addressed immediately." Finn email of Oct. 22, 2009, Plaintiffs' App. at 94. Boyd never saw Judge Finn's email. During 2009, no one suggested to Boyd that the court reporters who were being terminated or having their hours permanently reduced were entitled to due process prior to termination or having their hours cut.

The Judicial Council recommended that the Iowa Supreme Court adopt Boyd's newest plan. In November 2009, the Iowa Supreme Court adopted and approved Boyd's latest layoff plan. Boyd's plan eliminated positions across the judicial branch, including court attendants, Juvenile Court Services positions and court reporters assigned to district associate judges. Under the plan, each Iowa judicial district was required to eliminate a designated number of court reporters. The plan called for the Iowa judicial branch to cut the FTEs of 19.25 court reporters. Other than seniority, the criteria suggested by Boyd concerning which court reporters should be laid off was quite subjective.

In addition to the lay offs of court reporters, the plan eliminated support and administrative positions in the Iowa Supreme Court, the Iowa Court of Appeals, the Clerk of the Iowa Supreme Court's office, the State Court Administrator's Office, and the Iowa Court Information System. Boyd, the district court administrators, and the chief judges of each Iowa judicial district implemented the Iowa Supreme Court's second layoff plan.

On November 12, 2009, Hand notified Amy Lutgen that her hours would be permanently reduced from 40 hours per week to 26 hours per week, effective December 11, 2009. It was not Judge McGlynn's decision to reduce Lutgen's hours. Hand was

acting on the orders of the Iowa Supreme Court, Chief Justice Ternus, and Boyd when he reduced Lutgen's work hours.  Judge McGlynn was in disbelief when he found out about Lutgen's reduction in hours.  He considered Lutgen to be an excellent court reporter who could never be replaced by any sort of machine.  At no time prior to her permanent reduction in hours was Lutgen given a hearing.  Lutgen and Judge McGlynn first learned on November 12, 2009, that Lutgen's hours were to be permanently reduced.  There were court reporters in the Second Judicial District who had less seniority than Lutgen who were neither laid off nor had their work hours cut.   On February 12, 2010, Lutgen was reinstated to full-time status.  Lutgen has served as a court reporter with the State of Iowa for approximately 14 years.

On November 12, 2009, Hand also terminated Schaffner's employment, effective December 11, 2009.  Hand was again acting on the orders of the Iowa Supreme Court, Chief Justice Ternus, and Boyd when he fired Schafffner.  Schaffner worked for Judge Stroebe the entire time she was an official court reporter.  Judge Stoebe considered Schaffner to be an exemplary employee and a valuable asset to the court system.  It was not Judge Stoebe's decision to terminate Schaffner.  Judge Stoebe and Schaffner found out she was being fired at the same time.  He was not allowed to have any input on whether Schaffner should be terminated.  Schaffner did not receive a pre-termination notice or hearing.  Judge Stoebe was later appointed an Iowa District Court Judge.  He hired Schaffner as his court reporter.  She was reappointed on February 7, 2011.  Schaffner has served as a court reporter with the State of Iowa for approximately four and one--half years.

On November 12, 2009, Hand also terminated Savits's employment, effective December 11, 2009.  He was again acting on the orders of the Iowa Supreme Court, Chief

Justice Ternus, and Boyd when he fired Savits.  At the time she was fired, Savits was still working for Judge Riley. He considered Savits to be a top notch reporter and there was none better. It was not Judge Riley's decision to terminate Savits.  Judge Riley and Savits leaned of her firing at the same time.  Judge Riley was not permitted any input on Savits's firing.  Savits did not receive a pre-termination notice or hearing.  She served as a court reporter with the State of Iowa for over 10 years.

On November 12, 2009, Carroll Edmondson notified Kurth that her hours would be permanently reduced effective December 11, 2009, from full-time to 24 hours a week. Edmondson was acting on the orders of the Iowa Supreme Court, Chief Justice Ternus, and Boyd when he reduced Kurth's hours.  Kurth was a good and satisfactory court reporter who never required any sort of discipline.   At the time her hours were permanently reduced, Kurth reported to Judge Lewis.  Judge Lewis had no say in the decision to permanently reduce Kurth's hours.   At no time prior to her permanent reduction in hours was Kurth given a hearing.  There were court reporters in the Sixth Judicial District who had less seniority than Kurth who were neither laid off nor had their work hours cut.   Kurth has served as a court reporter with the State of Iowa for approximately 21 years and 8 months.

None of the plaintiffs were terminated or had their hours permanently reduced because of any alleged inefficiency, insubordination, incompetence, failure to perform assigned duties, inadequacy in performance of assigned duties, narcotics addiction, dishonesty, unrehabilitated alcoholism, negligence, conduct which adversely affects the performance of the individual or of the judicial branch, conduct unbecoming a public employee, or misconduct. These are the grounds which constitute "cause" under Iowa Code § 602.1218.

13

## II.  LEGAL ANALYSIS

### A.  Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248.  An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating

14

genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex,* 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097,

> 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

The Eighth Circuit Court of Appeals recognized in a number of panel decisions that summary judgment is "disfavored" or should be used "sparingly" in employment discrimination cases. *See id.*, at 1043 (collecting such cases in an Appendix). The rationales for this "employment discrimination exception" were that "discrimination cases often turn on inferences rather than on direct evidence. . . .," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and that "intent" is generally a central issue in employment discrimination cases. *See, e.g., Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005) (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). On the other hand, the Supreme Court recognized that, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against

16

the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In its *en banc* decision in *Torgerson*, the Eighth Circuit Court of Appeals expressly rejected the notion that summary judgment in employment discrimination cases is considered under a separate standard, citing *Reeves* and *Celotex*. Instead, the court held as follows:

> Because summary judgment is not disfavored and is designed for "every action," panel statements to the contrary are unauthorized and should not be followed. There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.

*Torgerson*, 643 F.3d at 1043.

Therefore, I will apply these standards to the parties' respective motions for summary judgment.

### B.  Due Process

#### 1.   Property interest

In plaintiffs' due process claim against defendants, plaintiffs allege defendants violated their right to due process by terminating their employment or permanently reducing their hours without hearing and notice, and without "just cause," as required by Iowa Code §§ 602.6603(7) and 6602.1218. Generally, the threshold inquiry in analyzing a procedural due process claim is whether plaintiffs have a property or liberty interest protected by the Constitution. *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972). The United States Supreme Court has held that the Fourteenth Amendment's due process

guarantee applies only to public employees who have a "property interest" in the terms or conditions of their employment. *Roth,* 408 U.S. at 577 (1972); *see Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997). "'A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it.'" *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011) (quoting *Winegar v. Des Moines Indep. Community Sch. Dist.,* 20 F.3d 895, 899 (8th Cir. 1994). "Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee." *Winegar,* 20 F.3d at 899 (citing *Bishop v. Wood,* 426 U.S. 341, 344 (1976)). "Whether the employee had a legitimate claim of entitlement—and thus, a constitutionally protected property interest—depends on state law and the terms of his employment." *Mulvenon*, 643 F.3d at 657 (citing *Kozisek v. Cnty. of Seward, Neb.,* 539 F.3d 930, 937 (8th Cir. 2008)); *see Bishop,* 426 U.S. at 344 (noting that the sufficiency of the claim of a property interest "must be decided by reference to state law."). When such a property interest exists, the employee is entitled to a hearing or some related form of due process before being deprived of the interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985). The sufficiency of the claim of a property interest "must be decided by reference to state law." *Bishop,* 426 U.S. at 344. Plaintiffs assert Iowa Code § 602.6603(7), read in conjunction with Iowa Code § 602.1218, creates their property interest in their employment.

Iowa Code § 602.6603(7) provides: "[a] court reporter may be removed for cause with due process by the judicial officer making the appointment." Iowa Code § 602.1218 defines "cause" as:

> Inefficiency, insubordination, incompetence, failure to perform
> assigned duties, inadequacy in performance of assigned duties,
> narcotics addiction, dishonesty, unrehabilitated alcoholism,

> negligence, conduct which adversely affects the performance
> of the individual or of the judicial branch, conduct unbecoming
> a public employee, misconduct, or any other just and good
> cause constitutes cause for removal.

IOWA CODE § 602.1218. Section 602.6603(7) is silent as to whether this is the exclusive procedure for removing a court reporter. No decision of the Iowa Supreme Court or the Iowa Court of Appeals has interpreted or construed § 602.6603(7). Likewise, § 602.1218 is entirely silent as to whether budgetary restrictions constitute cause for removal. Again, neither the Iowa Supreme Court nor the Iowa Court of Appeals has interpreted or construed § 602.1218. I need not determine whether plaintiffs are correct in their assertion that § 602.6603(7) creates a property interest in their jobs. Assuming, *arguendo*, that plaintiffs have such a property interest, their jobs were eliminated or their hours permanently reduced as part of a legitimate governmental cost-cutting measure, I will first decide whether they were entitled to pre-termination hearings under the "reorganization exception."

### 2. *Reorganization exception*

Under the "reorganization exception," federal courts have recognized that "[w]hen a government eliminates an employee's position in connection with a 'legitimate governmental reorganization' . . . the employee is not entitled to notice or a hearing." *Schultz v. Green Cnty. State of Wisc.*, 645 F.3d 949, 952 (7th Cir. 2011); *accord Rodriguez-Sanchez v. Municipality of Santa Isabel*, 658 F.3d 125, 130 (1st Cir. 2011) (holding that "pre-termination hearings are not required by due process where a bona fide government reorganization plan bases dismissals on factors unrelated to personal performance."); *Duffy v. Sarault,* 892 F.2d 139, 147 (1st Cir. 1989) ("Where a reorganization or other cost-cutting measure results in dismissal of an employee no hearing

is due."); *see Whalen v. Massachusetts Trial Ct.,* 397 F.3d 19, 25 (1st Cir. 2005) (noting that "we have recognized a limited 'reorganization exception' to due process that eliminates the need for a hearing where a reorganization or other cost-cutting measure results in the dismissal of an employee."); *Misek v. City of Chicago,* 783 F.2d 98, 101 (7th Cir. 1986) (recognizing that "there is an exception to a hearing right when the discharge is caused by reorganization."); *Day v. City of Providence,* 338 F. Supp. 2d 310, 317 (D.R.I. 2004) ("'Where a reorganization or other cost-cutting measure results in dismissal of an employee no hearing is due.'") (quoting *Duffy,* 892 F.2d at 147); *Hartman v. City of Providence,* 636 F. Supp. 1395, 1410 (D.R.I. 1986) ("Numerous federal and state courts have recognized that an employee who loses his or her job or who is furloughed is not entitled to a hearing, despite the presence of a "no dismissal except for cause" rule, when the position is abolished pursuant to a bona fide government reorganization or kindred cost-cutting measure.); *see also Upshaw v. Metropolitan Nashville Airport Auth.,* 207 Fed. App'x 516, 519 (6th Cir. 2006) (observing that "[a] number of other jurisdictions have recognized a general "reorganization exception" to civil service-derived due process requirements . . ."); *Washington Teachers' Union Local # 6 v. Board of Educ.,* 109 F.3d 774, 779-80 (D.C. Cir. 1997) (suggesting a property interest in continued employment may not survive a bona fide reduction in force); *Ritz v. Town of East Hartford,* 110 F. Supp. 2d 94, 102 (D. Conn. 2000) (suggesting that "legitimate reorganization" would be grounds to grant defendants' motion for summary judgment on the issue of a procedural due process violation of employee with protected property interest).[2]

---

[2]The Eighth Circuit Court of Appeals has not had occasion to recognize the reorganization exception. The court, however, noted, in dicta, that: "In the ordinary,
(continued...)

The rationale behind the reorganization exception, as the First Circuit Court of Appeals cogently observed last year, is that "[b]ecause such a plan is aimed at positions of employment rather than at individual employees, a pre-termination hearing would be a futile exercise." *Rodriguez-Sanchez*, 658 F.3d at 130.   "'[S]ince there are no charges against the employee . . . there would be no occasion for a hearing, and it would be idle to hold one.'" *Whalen*, 397 F.3d at 25 (quoting *Hartman*, 636 F. Supp. at 1411 (quoting in turn *Kusza v. Maximonis*, 363 Pa. 479, 70 A.2d 329, 331 (1950) (internal quotation mark omitted)).   However, where a purported governmental reorganization is merely a pretext for terminating an employee for other, discriminatory reasons, the reorganization exception is inapplicable. *Hartman*, 636 F. Supp. at 1416 ("[C]ourts cannot permit the exception to become a convenient ruse whereby a government agency, simply by affixing a label, can avoid the necessity for demonstrating 'cause' when it wishes to dismiss a particular employee.").   Thus, the relevant question is whether the Iowa court system reorganization was a pretext for harming plaintiffs.   Here, the summary judgment record indicates that the Iowa court system was reorganized solely to save costs, not to terminate or reduce the hours of plaintiffs.

Plaintiffs argue that the reorganization exception does not apply because the Iowa Supreme Court lacked authority to create a layoff plan.   I disagree.   Iowa law places control of the Iowa judiciary solely with the Iowa Supreme Court.   The Iowa Constitution provides, "[t]he supreme court shall . . . exercise a supervisory and administrative control

---

[2](...continued)

budgetary lay-off situation, however, individual pre-lay-off hearings are not necessary given the impracticality of imposing such a requirement." *Praprotnik v. City of St. Louis*, 798 F.2d 1168, 1178 (8th Cir. 1986), *rev'd on other grounds*, 485 U.S. 112 (1988).

over all inferior judicial tribunals throughout the state." IOWA CONST. art. 5, § 4.   In keeping with this constitutional provision, "[t]he supreme court has supervisory and administrative control over the judicial branch and over all judicial officers and court employees." IOWA CODE § 602.1201.   The Iowa Supreme Court is also granted authority to "prescribe procedures for the orderly and efficient supervision and administration of the judicial branch.   These procedures shall be executed by the chief justice." IOWA CODE § 602.1204(1).   In addition, the Iowa Supreme Court has authority over the Iowa judiciary's budgeting and funding.   IOWA CODE § 602.1301.   The Iowa Supreme Court appoints a State Court Administrator, who "is the principal administrative officer of the judicial branch, subject to the immediate direction and supervision of the chief justice." IOWA CODE §§ 602.1208(1)-(2).   Along with other duties, the State Court Administrator is responsible for "[m]anag[ing] the judicial branch" and "[a]dminister[ing] the funds appropriated to the judicial branch." IOWA CODE § 602.1208(2).   The State Court Administrator is authorized to: "issue directives relating to the management of the judicial branch.   The subject matters of these directives shall include, but need not be limited to, fiscal procedures . . ." IOWA CODE § 602.1204(2).   Thus, I conclude that the Iowa Supreme Court had authority under Iowa law to create the two reorganization plans. Defendants terminated plaintiffs' positions or permanently reduced their hours through a legitimate governmental reorganization.   Nothing in the record suggests that the reorganization plans were pretextual.   Thus, plaintiffs were not entitled to due process.

22

### III.   CONCLUSION

Having found that defendants did not violate plaintiffs' due process rights as a result of their execution of a legitimate reorganization of the Iowa court system, defendants' Motion for Summary Judgment is **granted** and plaintiffs' Motion for Summary Judgment is **denied.**   Judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 6th day of February, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA